UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WESTON CAPITAL ADVISORS, INC., ET AL.,

Plaintiffs,

v. 14 CV 4469 (PAC)

PT BANK MUTIARA, TKB,

Defendant.

------------------------------x

New York, N.Y.
November 3, 2016
12:10 p.m.

Before:

HON. PAUL A. CROTTY

District Judge

APPEARANCES

MANUEL & ROSENFELD, LLP
Attorney for Plaintiffs
BY: CHARLES B. MANUEL, JR.

TUCKER LEVIN, PLLC
Attorney for Plaintiffs
BY: DUNCAN P. LEVIN

QUINN EMANUEL URQUHART & SULLIVAN
Attorneys for Defendant
BY: MARC LAURENCE GREENWALD
ANDREW PETER MARKS
DANIEL RICKERT KOFFMANN

(In open court; case called)

MR. MANUEL: Good morning, your Honor. Charles Manuel for plaintiff. With me today is Duncan Levin of Tucker Levin. He has filed an appearance in the case.

THE COURT: Great. Thank you.

MR. LEVIN: Good morning, your Honor.

MR. GREENWALD: Mark Greenwald, Andrew Marks and Daniel Koffmann of the law firm Quinn Emanuel on behalf of defendant Bank Mutiara. Good afternoon, your Honor.

THE COURT: Well Mr. Manuel do you want to start by bringing me up to date.

MR. MANUEL: Yes, your Honor. The Second Circuit addressed the appeal in two parts. One is what I would call the appeal or the expanded contempt order and the other is the appeal of the award of legal fees of approximately six hundred thousand dollars to Quinn Emanuel.

In a footnote in the decision on the contempt appeal, the Second Circuit indicated that upon remand of the matter the plaintiffs could make a further presentation of proof regarding inability to pay the expanded contempt sanction.

And on the appeal from the fee award the Second Circuit has indicated that it would afford the Court and counsel, of course, the opportunity to review an issue that we raised during the appeal of the fee award, an issue regarding activities of Bank Mutiara, Federal Bank of the Middle East,

and Quinn Emanuel in connection with a proceeding that was separate from but contemporaneous with the proceedings in this Court with respect to contempt. And the Second Circuit stated that as to this additional matter it is ordered that appellant's motion to supplement the record and for remand is denied without prejudice to the District Court informing this Court that it would grant a motion to supplement the record and reconsider its order awarding attorneys' fees under Federal Rule of Appellate Procedure 12.1.

Your Honor, this action became a quite substantial matter in the Second Circuit in connection with motion practice, with our motion for reconsideration and for supplementation of the record.

I have a volume of the papers that were submitted in connection with that matter that I think might assist the Court in its consideration of this matter. And I'd like to hand it up. I've given a copy to defense counsel.

THE COURT: Have you paid any of the money that you owe the defendants? Have you taken any steps to purge yourself of contempt?

MR. MANUEL: Your Honor, we have not paid any of the money. We have not been able to pay the money. The company has been only able to continue its operations. But --

THE COURT: So the relief you want to give me a stack of papers and ask me to do what?

MR. MANUEL: What we would like to do is set up a schedule for addressing the two matters that we believe are appropriately subject for remand here, the two matters that I have identified. One is the issue of ability to pay and the other is the issue of the matters raised in connection with the fee appeal and, in particular, our request for reconsideration of the ruling on that regard. And we can proceed reasonably expeditiously here. There are proceedings taking place elsewhere globally that do have some bearing on the second matter in particular. It involves some very serious matters. You'll see that in the papers that we submitted to the Second Circuit. And, therefore, what we'd like to do is make a submission to the Court, recommend a schedule for further consideration and briefing on these two matters.

THE COURT: And what would happen if I were to deny the application?

MR. MANUEL: Then your Honor would be I think responding to the Second Circuit's notification on remand but I believe that this should be given very careful consideration, your Honor.

THE COURT: Mr. Greenwald.

MR. GREENWALD: Thank you, your Honor.

Two different issues. One is the contempt order as to the other entities. The circuit affirmed this court's order as well as the escalating fines. The escalating fines as of today

are approximately $46,200 million. And I don't think we need motion practice to know that at this point those are not going to succeed -- further escalation of those fines are not going to succeed in getting Mr. Liegey and his web of entities to pay the money that he owes the defendant in this case. But they continue. And they haven't made any effort to make any demonstration as to their ability to pay anything, the original amount, the fees, the interest, or the fines. But we would consent to the Court changing the escalation so it no longer escalates or even diminishing that.

The question of attorneys' fees. The Court ordered in its original order that we could apply for attorneys' fees. We put in the amount of fees. They didn't oppose it. The Court entered an order awarding us the attorneys' fees we sought. That amount was unopposed and their appeal, we submit, is frivolous. There's nothing to appeal. The basis for the attorneys' fees was the original order of contempt which has been affirmed. The amount wasn't even opposed. There is nothing to appeal.

They want to supplement the record with the same kind of innuendo and misunderstanding of the record that, on a motion they have no reason to believe the Court would ever reconsider. And Rule 12.1 of the Federal Rules of Appellate Procedure would just allow the Court to tell the Court of Appeals, yes, I would reconsider the order being appealed. But

they're not providing this Court with any basis to reconsider the attorneys' fees order. So we would submit there is no reason to allow further motion practice to reconsider an order that this Court entered unopposed and basically already affirmed by the Circuit.

We would suggest what Bank Mutiara is interested in is getting back the $3.6 million that was originally improperly taken from it. And we would suggest that there are two courses of action, unless they start repaying it and show some effort. One would be a referral from this Court to the U.S. Attorney's Office for potential criminal contempt because Mr. Liegey and his entities continue thumbing its nose at this Court's order.

The other would be something that would be unusual but we think supported by the case law, which we would make a motion to actually get judgment. And the judgment we would seek would be ownership of all of the entities which appear to be worth less than $3.6 million; otherwise, they could monetize those assets and be able to pay us back and try and cure the contempt.

And the reason that would be valuable to Bank Mutiara is because Liegey and his entities are engaged in a worldwide effort to take these, what we think are improper judgments from Mauritius and go to Hong Kong and Singapore and different jurisdictions trying to sue Bank Mutiara all over the world. If Bank Mutiara owned the entities, it would get value from

that by directing the counsel in those cases to cease those actions. And that would end the litigation in this Court and also end the litigation all over the world.

It's not a usual procedure in a contempt action.

THE COURT: Nothing about this case is usual.

MR. GREENWALD: And we're at a loss as to how to make Bank Mutiara whole. All these years later when we haven't been paid back a dime.

THE COURT: So now what about the Second Circuit's order that, with respect Mr. Manuel correctly read the last paragraph. Accordingly the -- it is ordered that appellant's motion to supplement the record and for remand is denied without prejudice to the District Court informing this Court that it would grant a motion to supplement the record and reconsider its order awarding attorneys' fees and so forth. What should I do to comply with that?

MR. GREENWALD: If they made a motion in this Court to reconsider this Court's order of attorneys' fees or to supplement the record, the Court can consider it. But there is absolutely --

THE COURT: At the present time the papers that Mr. Manuel wants to tender are what?

MR. MANUEL: They are simply the papers that were filed in the Second Circuit with respect to that.

THE COURT: Are they a motion to reconsider,

Mr. Manuel?

MR. MANUEL: That's what we are proposing to do, your Honor. We're not doing that today but we're proposing to establish a schedule for that motion.

THE COURT: What do the papers say?

MR. MANUEL: These are the papers submitted by both sides in connection with the applications that Mr. Greenwald has referred to.

Mr. Greenwald simply reiterated the contentions he made to the Second Circuit on this very issue and the Second Circuit did not accept those contentions. He wanted to dismiss this matter. And they didn't dismiss it. They referred back to your Honor.

THE COURT: Well, okay.

MR. MANUEL: It's an extremely serious matter. And it includes the fact, your Honor, that --

THE COURT: I'll tell you what is an extremely serious matter, Mr. Manuel, with all due respect, is your client's continuing thumbing his nose at the legitimate orders of this Court. That's what's really offensive.

MR. MANUEL: Your Honor, with all due respect Mr. Liegey has done nothing of the kind. But what we have here, and what we've presented to the Second Circuit --

THE COURT: That's not what I say. That's what you say.

MR. MANUEL: What we presented to the Second Circuit, your Honor, is a clear record that in December of 2014, as we were in the midst of addressing this matter, Bank Mutiara took $8 million of money laundered funds that it had in its possession as so-called -- part of a so-called settlement of a another litigation, which was a sham settlement, a fraudulent settlement. They paid that money over to Quinn Emanuel. This was $8 million paid to Quinn Emanuel at a time when our judgments would have been fully enforceable in England where that proceeding took place. They slipped out $8 million. They never disclosed it. They buried it in their financials. That $8 million, your Honor, would have satisfied the 3.6 million two times over and then some and this entire matter would have been out of the way. It would have been done. This was all done as a massive fraud, a massive scheme of money laundering. And this is an extremely serious matter. They stole $8 million from a client of Federal Bank of the Middle East in the course of an arbitration in London. Quinn Emanuel was smack in the middle of that process, your Honor. We believe that they orchestrated the process. And this occurred again in December of 2014 after their own expert witness in the London proceeding had told them chapter and versus in an 80-page memorandum that the case that they were supposedly handling, in case they didn't already know it, was not a case involving repo transactions but was a case involving one of the most massive

schemes of money laundering that that expert had ever seen.

THE COURT: Mr. Manuel to cut to the chase here what is it that you want to do?

MR. MANUEL: There was the 3.6 million times two, your Honor. What we want to do is make a presentation to this Court showing that that's what they did, that we could and would have satisfied it. Nobody in London would have made the mistake that Kelley Drye & Warren made here. On proper notice we would have attached that $8 million. The money would have been paid to this Court and we would have been out of this matter back at that time. And the Second Circuit said better think about this some more. And that's what we are proposing to do. We believe that this matter should be briefed and fully addressed by the Court.

THE COURT: What about the supplement the record to reconsider its order awarding attorneys' fees?

MR. MANUEL: Yes, your Honor. That's what I'm referring to. That is to say, this was the matter that was raised in motion practice before the Second Circuit. This was information that came to our attention only after the briefing had been completed in the Second Circuit. It was new matter and that's why we propose reconsideration. Now the Second Circuit has referred it to you and that's what we want to address.

THE COURT: The materials that you want to submit to

me are what?

MR. MANUEL: Today all I'm submitting --

THE COURT: Let me finish, please. You're talking while I'm talking. I hadn't finished.

MR. MANUEL: Yes. I'm sorry.

THE COURT: The records that you want to submit to me today are the materials that entitle you to reconsideration of the attorneys' fees?

MR. MANUEL: This is a limited package of material. These are the materials that were submitted to the Second Circuit. We will have additional matters that we would like to submit to the Court in connection with the actual reconsideration motion.

THE COURT: Do you have to submit them? Can't we get those are from the Second Circuit, Marlon?

THE DEPUTY CLERK: We can but we would appreciate hard copies, your Honor.

MR. MANUEL: We do have a volume of the hard copies here. I've given a copy to the other side.

THE COURT: Then you want to move to reconsider the attorneys' fees?

MR. MANUEL: Yes, your Honor. And we certainly would incorporate these papers as part of the packet but there would be additional materials that we would like to submit.

THE COURT: And Mr. Greenwald what do you say?

MR. GREENWALD: Can I just explain what Mr. Manuel is talking about just so that our position is clear.

THE COURT: Yes.

MR. GREENWALD: So Bank Mutiara was sued by FMEE, a Middle Eastern bank, in a London private arbitration relating to a transaction done by the prior corrupt owner of Bank Mutiara. In that arbitration Quinn Emanuel's London office represented Bank Mutiara. And one of the documents used in the arbitration was an expert opinion by a banking expert saying that the transaction between the Middle Eastern bank and the prior owner, corrupt owner had indicia of money laundering. That was the defense of Bank Mutiara.

The case then settled. And the settlement was paid by Bank Mutiara sending the settlement proceeds to Quinn Emanuel's client trust account, the way settlements are frequently done, and then Quinn Emanuel paying the plaintiff in the arbitration. Bank Mutiara then disclosed in its financials we had this arbitration, we settled it for $8 million, and we settled by sending it to Quinn Emanuel's London office for payment. That ends the case.

So what Mr. Manuel is doing, he has now found this expert report that was submitted as part of the arbitration and it has the word "money laundering." So he has money laundering and he has money going to Quinn Emanuel, therefore, ipso facto, Quinn Emanuel is engaged in money laundering. That's the

allegation he is making.

It makes absolutely no sense, not to mention the whole notion that somehow when Bank Mutiara settles this action in London they could take that money and use it to repay Bank Mutiara who they owed the $3.6 million dollars in this Court. That makes no sense either.

And now they're saying, Judge, the attorneys' fees application, which we didn't oppose the amount, and which the basis for has already been affirmed by the Circuit, we should have you reconsider based on our misunderstanding of the record in London. But we submit there is no reason to do that. But if they want to keep multiplying the proceedings, I don't know that --

THE COURT: Isn't the best way to resolve this to allow them to make this filing and make his motion for reconsideration, for you to respond to that, and then for me to decide what is appropriate in the circumstances. I mean how else are we going to do it?

MR. GREENWALD: It's frustrating, but your Honor is correct.

THE COURT: All right. When do you want to make your motion?

MR. MANUEL: We can do that -- we don't feel that this has to be super expedited, your Honor. So I would suggest that --

THE COURT: You say it's an emergency. We've already -- you act as though you're shocked by this but this conference was supposed to be a month ago.

MR. MANUEL: I'm not suggesting that we're in an emergency situation, your Honor. I'm suggesting that we've got some very serious matters to address which have been completely mischaracterized by opposing counsel. But that will be addressed in our papers.

I would propose early December for our papers. Given the holidays perhaps early January or a date that counsel for defendant can suggest for opposing papers.

THE COURT: When do you want to submit your papers?

MR. MANUEL: I'm sorry, your Honor?

THE COURT: When do you want to submit your papers?

MR. MANUEL: A month from today.

THE COURT: Friday, December 2.

MR. MANUEL: Yes.

THE COURT: Mr. Greenwald.

MR. GREENWALD: Two weeks, your Honor.

THE COURT: That would be the 16th.

MR. GREENWALD: Yes.

MR. MANUEL: And a week if we could for a reply, your Honor.

THE COURT: The 23rd. Okay.

MR. MANUEL: There is another matter connected with

this, your Honor.

THE COURT: Yes.

MR. MANUEL: What you will see in the papers that we will be submitting is that what occurred in London involved not only money laundering, not only the transfer of funds, not only fraudulent reporting of Bank Mutiara's reports, not only Quinn Emanuel taking of $8 million as a legal fee under false information and pretenses, but also collusion between Quinn Emanuel and its alleged opposing counsel in that proceeding. In that case Quinn Emanuel was at least nominally representing Bank Mutiara. The complainant in that case, Federal Bank of the Middle East, was purportedly nominally represented by Hogan Lovells.

How does that tie in to what has happened in this court? It ties in, yes, for legal fees but also to the repayment of money. Your Honor may recall that there was a hearing before you in which you approved a refund of some of the legal fees that had been paid to Kelley Drye -- excuse me to Hogan Lovells and, yes, to Kelley Drye. Kelley Drye refunded $175,000 which is what it had been paid in the matter. Hogan Lovells rather mysteriously only refunded $100,000 out of 1,000,250. And it's actually -- we could show a million seven that had been paid to it by Weston. And we were not direct participants in that process. But we were mystified that Mr. Greenwald and Quinn Emanuel had settled for such a low

amount. If there had been a much larger amount, if there had been a much larger refund by Hogan Lovells, then the $3.6 million would have been reduced accordingly. Instead, Hogan Lovells walks away with a hundred thousand dollar payment.

We now believe that we have the story behind that payment, your Honor. This proceeding in London was in no way an arm's length proceeding. It was in no way as Mr. Greenwald characterized it as --

THE COURT: You know, I've heard enough now. What do you want to do with this?

MR. MANUEL: What I would like to do is be able to make an application with respect to the Hogan Lovells money. Hogan Lovells walked out of here with a net of between a million one hundred fifty and a million six. And now we know why a mere hundred thousand dollars was paid back.

It's our position that the entire amount should be paid back. And we believe that we can show that there, in fact, has been collusion between Hogan Lovells and Quinn Emanuel that brought about this nominal repayment which in turn leaves us with a much larger amount to repay.

THE COURT: Mr. Greenwald, this is bordering on fantasy now.

MR. GREENWALD: Hogan Lovells it was their counsel. We tried to get as much as we could. We got what we thought we could get. We would have loved to get more, but in our

client's view the -- what we got from Hogan Lovells was the best we could do in the circumstances. If they want to get money back from Hogan Lovells --

THE COURT: They should sue Hogan Lovells.

MR. GREENWALD: They should sue Hogan Lovells.

THE COURT: You know it would really help you, Mr. Manuel, if Mr. Liegey would come up with some of the money that he clearly owes. So if you want to file a separate lawsuit against Hogan Lovells, that's fine with me. But I'm not going to entertain this in the context of this lawsuit. It's got nothing to do with it.

So you make your motion by Friday, December 2. Mr. Greenwald will respond by the 16th. You reply by the 23rd and I'll decide the matter promptly.

Mr. Greenwald, I think your suggestion about stopping the compounding effect of the contempt order makes some sense. Do you want to submit a proposed order on that?

MR. GREENWALD: Yes, your Honor. We'll do that.

THE COURT: Anything else?

MR. MANUEL: Nothing from plaintiff, your Honor.

THE COURT: Mr. Greenwald?

MR. GREENWALD: No, your Honor.

THE COURT: Thank you very much.

(Adjourned)